UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARGIE MOFFETT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 10-cv-5324 |
| v. ) | |
| ) | Magistrate Judge Susan E. Cox |
| CHICAGO POLICE OFFICER ) | |
| JOSE SANDOVAL (Star #11169), and ) | |
| the CITY OF CHICAGO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**[1]

Plaintiff Margie Moffett brought claims against Chicago Police Officer Jose Sandoval for unlawful seizure under 42 U.S.C. § 1983 and for conversion and intentional infliction of emotional distress ("IIED") under Illinois law. Defendant City of Chicago was included for indemnity purposes. The claim for conversion was dismissed during the trial. The jury returned a verdict in favor of Officer Sandoval and against Ms. Moffett on the other charges and the City of Chicago was dismissed. Ms. Moffett now seeks a new trial under Federal Rule of Civil Procedure 59(a)(1)(A) on the Unlawful Seizure and IIED claims [dkt. 78]. For the reasons outlined below, Ms. Moffett's motion for a new trial is denied.

**I.  FACTUAL BACKGROUND**

On November 18, 2009, six Chicago Police Officers executed a search warrant at the first floor apartment of 7750 South Seeley Avenue in Chicago, Illinois. This was Ms. Moffett's residence

---

[1] On July 19, 2011, by the consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1(b), this case was assigned to this Court for all proceedings, including entry of final judgment [dkt. 30].

and where Stephen Hopkins, a friend of one of Ms. Moffett's children, was living at the time. The search warrant targeted Mr. Hopkins, whom the police suspected was dealing some form of cocaine out of the apartment. The first officer to enter the apartment was Officer Jack Meseck, the "shield officer." Officer Meseck was carrying a two-by-three foot plexiglass shield to protect the officers from the threat of Ms. Moffett's bullmastiff, Chief, which they knew lived in the apartment. Officer Sandoval was the second officer to enter the apartment, the "cover officer." As the cover officer, it was Officer Sandoval's duty to protect Officer Meseck, who had both of his hands on the shield. Within sixty seconds of entering the apartment, Officer Sandoval shot Chief eight times. Officers Sandoval and Meseck allege that Chief was in "attack mode" and that Officer Sandoval had to shoot the dog to protect the officers, whereas Ms. Moffett alleges that Chief posed no threat to the officers and, therefore, was shot unreasonably.

During the trial, Stephon Bellanger, Ms. Moffett's great-grandson, testified that he was in the apartment during the incident, and that at the time of the shooting, Chief was sleeping in the corner of the dining room. He also testified that at the time of the shooting, an African-American police officer put a gun to his head. The three police officers that testified all testified that none of the team that day were African-American and that nobody put a gun to Mr. Bellanger's head. As to evidence used in the trial, the Court allowed the search warrant and related affidavit to be entered into evidence (after removing irrelevant information from the affidavit). But we excluded a photograph of what Ms. Moffett claimed to be bullet holes in her floor and wall located in the corner of her dining room.

**II.     ANALYSIS**

Ms. Moffett argues that the Court should grant a new trial because the jury verdict was

against the manifest weight of evidence, and because the Court made erroneous evidentiary rulings. These arguments are addressed in turn.

> **A.  The jury's verdict was not against the manifest weight of evidence.**

Ms. Moffett argues that the jury's verdict was against the manifest weight of evidence because no reasonable trier of fact could have found the testimony of Officer Sandoval and Officer Meseck credible.[2] When a party alleges that a jury verdict is against the manifest weight of the evidence, "a new trial should be granted only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience."[3] The district court "has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial."[4] The district court may grant a new trial if, "after evaluating the evidence, [it] is of the opinion that the verdict is against the manifest weight of the evidence."[5] A verdict is against the manifest weight of the evidence if "only another outcome is obviously correct and the verdict is clearly unsupported by the evidence."[6]

The outcome of the trial depended on whose story the jury believed. Stephon Bellanger testified that there was no way that Officers Sandoval and Meseck could have thought that Chief was attacking them, but the jury chose to believe the officers, who claimed that Officer Sandoval shot Chief because the dog was lunging toward them. Even if we doubted the officers' story, we must balance the "'respect for the collective wisdom of the jury'" against "a duty not to 'approve

---

[2]Pl.'s Reply at 1, dkt. 82.
[3]*Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) (citation omitted).
[4]*Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).
[5]*Id.* at 633.
[6]*Black's Law Dictionary* 1048 (9th ed. 2009).

miscarriages of justice.'"[7] A district court's power to grant a new trial is not unlimited. A "certain deference to the jury's conclusions is appropriate."[8] Under that standard, we find the jury was entitled to conclude that the officers were more credible than Mr. Bellanger.[9]

The jury's outcome on both the unreasonable seizure and IIED counts is also supported by precedent. As to the unreasonable seizure, in *Ellis v. City of Chicago*, the Seventh Circuit upheld a jury verdict that found that a police officer did not commit an unreasonable seizure when he entered onto the plaintiff's property without a search warrant and shot and killed the plaintiff's dog because it lunged at him.[10] The court reasoned that the jury legitimately found that the officer's conduct was reasonable.[11] Likewise, in the present case, the jury found Officer Sandoval's conduct to be similarly reasonable.

Regarding Ms. Moffett's IIED claim, conduct must be extreme and outrageous.[12] Although police officers are in a position of authority, which may make their conduct more likely to be extreme and outrageous,[13] the conduct must still be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency."[14] Additionally, the emotional distress inflicted must be "so severe that no reasonable man could be expected to endure it."[15] The jury found that Officer Sandoval's conduct, and Ms. Moffett's distress, did not meet these high standards.

---

[7]*See Mejia*, 650 F.3d at 633 (*quoting* 11 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure § 2806, at 74 (2d ed.1995)).
[8]*Id.*
[9]*See Galvan v. Norberg*, 678 F.3d 581, — (7th Cir. 2012) (finding that if both sides present plausible evidence, the court should not overturn the jury's credibility finding).
[10]667 F.2d 606, 609 (7th Cir. 1981).
[11]*Id.* at 610.
[12]*McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988).
[13]*Id.* at 809-10.
[14]*Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767 (1976) (*quoting* Restatement (Second) of Torts § 46 cmt. d (1965)).
[15]*Id.* (*quoting* Restatement (Second) of Torts § 46 cmt. j (1965)).

**B.     The Court's evidentiary rulings were proper.**

Moving to the Court's evidentially rulings, Ms. Moffett argues that: (1) the Court erroneously admitted the search warrant and affidavit; (2) the Court erroneously excluded the photograph of the alleged bullet holes; (3) Officer Sandoval's counsel improperly impeached Stephon Bellanger; and; (4) Officer Sandoval's counsel made improper statements in his closing argument that significantly prejudiced her.[16]

When a party alleges that the district court has made an erroneous evidentiary ruling, a new trial is only granted "if refusal to take such action appears to the court inconsistent with substantial justice."[17] A plaintiff must show that his or her rights were prejudiced by the erroneous evidentiary ruling, or that the ruling seriously hindered his or her case.[18] An erroneous evidentiary ruling does not warrant a new trial "if the record indicates that the same judgment would have been rendered regardless of the error."[19]

**1.     The Court properly admitted the search warrant and affidavit.**

Ms. Moffett first argues that the Court erroneously admitted the search warrant and affidavit.[20] She argues that doing so had "no relevance to a resolution of the disputed issues at trial."[21] She further argues that the admission led to a slew of references to cocaine and crack cocaine, which unfairly gave the impression that she was involved with criminal activity.[22]

Evidence is relevant if "it has *any* tendency to make the existence of any fact that is of

---

[16]Pl.'s Mot. at 7-18, dkt. 71.
[17]*Goodman v. Ill. Dep't of Fin. & Prof'l Regulation*, 430 F.3d 432, 439 (7th Cir. 2005) (citation omitted).
[18]*See Ellis*, 667 F.2d at 611 (*citing* Fed. R. Civ. P. 103(a)(2)).
[19]*Goodman,* 430 F.3d at 439 (citation omitted).
[20]Pl.'s Mot. at 7-16, dkt. 71.
[21]Pl.'s Reply at 5, dkt. 82.
[22]Pl.'s Mot. at 7-8, dkt. 71.

consequence to the determination of the action more probable or less probable than it would be without the evidence."[23] This includes search warrants and related affidavits.[24] Evidence that "is not directly related to a disputed fact" may be relevant if "provides background information."[25] Relevant evidence is admissible if its probative value outweighs the danger of unfair prejudice.[26]

The admission of the search warrant and affidavit was entirely relevant because it alerted the jury to the legality of the police's presence in the apartment. It provided pertinent background information relating to the reasonableness of Officer Sandoval's conduct. Ms. Moffett argues that there was a perception of criminality because of the discussion of cocaine and crack cocaine. But any link between Ms. Moffett and criminality, if any at all, was minimal. First, one of the officers in the search team testified that Ms. Moffett was "never the target of [the] search warrant" and that her name did not appear anywhere in the complaint or affidavit.[27] Officer Sandoval's counsel, in his closing argument, also stated that he "was not suggesting that Ms. Moffett . . . had drugs on her, knew drugs were [in the apartment], . . . whether it was cocaine or crack cocaine or any derivative thereof."[28] And to further minimize any association between Ms. Moffett and criminality, the Court ordered that potentially prejudicial information be redacted from the affidavit, and barred evidence of the recovery of marijuana and a firearm from the apartment as a result of the search.

---

[23]*Equal Emp't Opportunity Comm'n v. Ind. Bell Tel. Co.*, 256 F.3d 516, 533 (7th Cir. 2001) (emphasis in original) (*quoting* Fed. R. Evid. 401).

[24]*See Cooper v. Dailey*, No. 07 C 2144, 2012 WL 1748150 (N.D. Ill. May 16, 2012) ("[W]arrants [that] are direct evidence of a disputed issue for trial . . . are admissible under [Federal] Rule [of Evidence] 401."); *Graham v. Dolan*, No. 08 C 889, 2012 WL 1144662 (N.D. Ill. Apr. 5, 2012) (allowing a search warrant into evidence to show that the defendant officer had entered a building legally, in a case where the allegations were that the officer was unreasonable when acting outside of the scope of the search warrant).

[25]*Whitehead v. Bond*, 680 F.3d 919, — (7th Cir. 2012) (*quoting United States v. Boros*, 668 F.3d 901, 908 (7th Cir. 2012)).

[26]*See id.* ("Relevant evidence may be excluded 'if its probative value is substantially outweighed by a danger of ... unfair prejudice....'") (*quoting* Fed. R. Evid. 403).

[27]Tr. 362-63.

[28]Tr. 445.

### 2. The Court properly excluded the photograph of the alleged bullet holes.

Ms. Moffett next argues that the Court erroneously excluded the photographs of what she claims are bullet holes in the corner of her dining room, where Chief was shot.[29] She claims that the photograph showed that the purported bullet holes were on the floor, rather than on the wall, where one might expect them to be if Chief was actually lunging through the air toward Officers Sandoval and Meseck.[30] She also argues that it should have been left to the jury to decide whether the holes in the picture were bullet holes, and whether they believed the officers' story based on the location of the alleged bullet holes in the photograph.[31]

When a party attempts to admit a photograph into evidence, it must make an attempt to show "when, where, by whom, and under what circumstances the picture was taken."[32] In this case, Ms. Moffett would have needed to authenticate it by producing evidence sufficient to support a finding that the photograph showed bullet holes.[33] In other words, Ms. Moffett would have needed to produce witness testimony: a person with actual knowledge that the photograph depicted bullet holes.[34] And then she would have to show that those bullet holes were from the events of that day. The Court even pointed this out in a sidebar during the trial.[35] Ms. Moffett's own testimony would not have sufficed, since, as the Court pointed out, Ms. Moffett was not in the room at the time of the shooting, nor was she disclosed as an expert.[36] As the Court noted, the dots in the picture could have

---

[29]Pl.'s Mot. at 16-17, dkt. 71.
[30]Pl. Reply at 3, dkt. 82.
[31]Pl.'s Reply at 2, dkt. 82.
[32]*Dillon v. Evansville Ref. Co.*, 127 F.2d 13,17 (7th Cir. 1942).
[33]*See* Fed. R. Evid. 901(a).
[34]*See* Fed. R. Evid. 901(b)(1).
[35]*See* Tr. at 318 (stating that the information "has no relevance to this case unless someone can tie it up, and I don't think that's going to happen.").
[36]Tr. at 318-19 (Ms. Moffett's counsel effectively conceded this point when he joked that he could say that Ms. Moffett was a "ballistics expert from the '70s" and "an Israeli secret service agent.").

been bullet holes, or they may not have been. Without proper authentication the jury would be speculating. As a final point, Ms. Moffett would have also needed to provide expert testimony regarding where one should expect bullet holes to be if shot at two different angles.

Next, Ms. Moffett argues that barring the photograph was highly prejudicial to her because it stopped the jury from seeing that Chief was shot in a particular corner of her dining room, which she could use to impeach the officers.[37] The legal standard is that Ms. Moffett is not entitled to a new trial if the jury would have come to the same conclusion regardless of the alleged evidentiary ruling.[38] As Officer Sandoval points out, the issue of where Chief was shot was not contested at trial, since Officers Sandoval and Meseck both testified that Chief approached them from the same corner of the dining room that was shown in the photograph.[39] On this point, the admission of the photograph would not likely have changed the jury's conclusion.

### 3. Defendant's impeaching of Stephon Bellanger was proper.

Ms. Moffett next argues that Officer Sandoval's counsel improperly impeached Mr. Bellanger by repeatedly telling the jury that there were no African-American police officers present at the time of the shooting.[40] She argues that there was no testimony regarding the second team of officers, and whether an African-American officer was present at that time.[41] She also claims that Officer Sandoval's failure to deny that any African-American officers were at the scene of the incident is akin to an admission, warranting a new trial.[42]

Mr. Bellanger testified that an African-American officer put a gun to his head at the same

---

[37] Pl.'s Mot. at 16, dkt. 71.
[38] *See Goodman*, 430 F.3d at 439.
[39] Def.'s Resp. at 7, dkt. 81.
[40] Pl.'s Mot. at 17, dkt. 71.
[41] Pl.'s Mot. at 17, dkt. 71.
[42] Pl.'s Reply at 8, dkt. 82.

time that Officer Sandoval started shooting Chief, not during a second search.[43] As previously stated, the jury had to choose whom to believe: Mr. Bellanger or the police officers. The police officers testified that there were no African-American officers present. The jury believed the police officers.

### 4. Defendant's alleged improper statements during closing argument did not affect the outcome of the trial.

Ms. Moffett next argues that Officer Sandoval's counsel made improper statements during his closing argument, in relation to his saying "don't punish [Officer Sandoval] for doing his job" and mentioning Steven Hopkins's absence from the trial.[44] Officer Sandoval responds by pointing out that the Court sustained Ms. Moffett's objection and instructed the jury that the closing arguments were not evidence.[45] Citing the Seventh Circuit, Officer Sandoval asserts that "improper comments during closing argument rarely rise to the level of reversible error."[46] Officer Sandoval's counsel's statements did not constitute one of the rare exceptions to this rule, such as making a "golden rule" argument, where counsel prejudices the opposing party by asking the jury to imagine itself in his or her client's shoes, which "encourages the jury to depart from its neutral role."[47] Given that the jury was instructed that the closing arguments were not to be considered evidence, we cannot find that Ms. Moffett was substantially prejudiced by the comments. The nature of the comments were not such that the jury would have disregarded our instruction.[48]

---

[43] *See* Tr. at 165.
[44] Pl.'s Mot. at 17-18.
[45] Def.'s Resp. at 8, dkt. 81.
[46] *Id.* (*quoting Sheldon v. Munford, Inc.*, 950 F.2d 403, 410 (7th Cir. 1991); *citing Miksis v. Howard*, 106 F.3d 754, 764 (7th Cir. 1997)).
[47] *Joan W. v. City of Chicago*, 771 F.2d 1020, 1022 (7th Cir. 1985).
[48] *See Ramsey v. Am. Air Filter Co.*, 772 F.2d 1303, 1311 (7th Cir. 1985) (upholding a district court's refusal to grant a new trial on the basis of discriminatory comments made about a party in a closing argument, since the comments would not have had an effect on the jury's decision).

### C. Ms. Moffett was not sufficiently prejudiced to warrant a new trial.

Ms. Moffett finally argues that the above alleged errors cumulated to warrant a new trial.[49] We find that the jury's verdict was reasonable, that the verdict was not against the manifest weight of evidence presented in the trial, and that the jury would have come to the same verdict had the incidents that Ms. Moffett complains of in her motion not occurred. Any possible errors, therefore, do not warrant a new trial.

### III. CONCLUSION

For the foregoing reasons, the Court denies Ms. Moffett's motion for a new trial [dkt. 78].

**IT IS SO ORDERED**.

Date: June 28, 2012

Susan E. Cox
United States Magistrate Judge

---

[49] Pl.'s Mot. at 18-19, dkt. 71.